**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| IN RE: H&R BLOCK IRS FORM 8863 | ) | MDL No. 2474 |
| LITIGATION | ) | |
| | ) | Master Case No. 4:13-MD-02474-FJG |
| ALL ACTIONS | ) | |

**SUGGESTIONS IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................ii

I.    BACKGROUND ........................................................................................................ 1

      A.    Statement Of The Case ................................................................................... 1

      B.    Settlement Agreement .................................................................................... 3

      C.    Notice To The Settlement Class ..................................................................... 5

II.   ARGUMENT ............................................................................................................. 5

      A.    Settlement And Class Action Approval Process ............................................ 5

      B.    Conditional Certification Of The Settlement Class Is Appropriate. ................ 8

            1.    Rule 23(a) Is Satisfied ......................................................................... 8

                  a.    Numerosity ................................................................................. 9

                  b.    Commonality .............................................................................. 9

                  c.    Typicality ................................................................................. 10

                  d.    Adequacy .................................................................................. 10

            2.    Rule 23(b) ........................................................................................ 11

      C.    The Settlement Should Be Approved As Fair, Reasonable, And Adequate. ....... 12

            1.    The Settlement Is Presumptively Fair ................................................. 12

                  a.    The Settlement Is The Product Of Extensive Arm's-length
                        Negotiations. ........................................................................... 13

                  b.    Counsel Are Experienced In Similar Litigation ......................... 14

                  c.    The Factual Record Was Well Developed Through
                        Independent Investigation. ....................................................... 14

            2.    The Settlement Agreement Satisfies The Fairness Criteria
                  Established By The Eighth Circuit For Final Approval ......................... 15

            3.    The Requested Class Representative Incentive Awards Are
                  Reasonable. ...................................................................................... 16

            4.    The Requested Attorneys' Fees Are Fair And Reasonable. ................. 17

      D.    The Court Should Approve The Distribution Of The Proposed Notice To
            The Settlement Class Members. ................................................................... 17

      E.    Appointment Of Class Counsel ................................................................... 19

      F.    Scheduling A Final Approval And Fairness Hearing Is Appropriate. ............. 19

III.  CONCLUSION ....................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

CASES

*Alpern v. UtiliCorp United, Inc.*,
  84 F.3d 1525 (8th Cir. 1996) ................................................................10

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997).........................................................................8, 10, 12

*Barfield v. Sho-Me Power Elec. Co-op.*,
  No. 11-CV-04321-NKL, 2013 WL 3872181 (W.D. Mo. July 25, 2013) ................................10

*Carpe v. Aquila, Inc.*,
  224 F.R.D. 454 (W.D. Mo. 2004) ............................................................12

*Claxton v. Kum & Go, L.c.*,
  No. 6:14-CV-03385-MDH, 2015 WL 3648776 (W.D. Mo. June 11, 2015) .....................6, 11

*Deboer v. Mellon Mortg. Co.*,
  64 F.3d 1171 (8th Cir. 1995) ................................................................10

*Donaldson v. Pillsbury Co.*,
  554 F.2d 825 (8th Cir. 1977) ................................................................10

*First Nat'l Bank v. Am. Lenders Facilities, Inc.*,
  No. CT 00–269 JRT/RLE, 2002 WL 1835646 (D. Minn. July 16, 2002) ................................6

*Gates v. Rohm & Hass Co.*,
  248 F.R.D. 434 (E.D. Pa. 2008)................................................................15

*Grunin v. Int'l House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975) ................................................................15, 18

*Gulino v. Symbol Tech., Inc.*,
  No. 06CV2810, 2007 WL 3036890 (E.D.N.Y. Oct. 17, 2007) ................................17

*Halvorson v. Auto–Owners Ins. Co.*,
  718 F.3d 773 (8th Cir. 2013) ................................................................11

*Hartley v. Suburban Radiologic Consultants, Ltd.*,
  295 F.R.D. 357 (D. Minn. 2013)................................................................12

*In re Charter Commc'n Sec. Litig.*,
  No. 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) .........................13, 15

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995).................................................................................................13

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
  176 F.R.D. 158 (E.D. Pa. 1997).........................................................................................14

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998)................................................................................................8

*In re Vitamins Antitrust Litig.*,
  No. 99-197(TFH), 1999 WL 1335318 (D.D.C. Nov. 23, 1999)..............................................7

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
  No. 4:03-MD-015, 2004 WL 3671053 (W.D. Mo. Apr. 20, 2004) .......................................18

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
  396 F.3d 922 (8th Cir. 2005) .......................................................................................7, 15

*In re Workers' Comp.*,
  130 F.R.D. 99 (D. Minn. 1990)...........................................................................................12

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
  No. 08-MDL-1958-ADM, 2013 WL 716088 (D. Minn. Feb. 27, 2013) ...............................13

*Jones v. NovaStar Fin., Inc.*,
  257 F.R.D. 181 (W.D. Mo. 2009)........................................................................................11

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist.*,
  921 F.2d 1371 (8th Cir. 1990) ...........................................................................................13

*Mullane v. Central Hanover Bank and Trust Co.*,
  339 U.S. 306 (1950)..........................................................................................................18

*Paxton v. Union Nat'l Bank*,
  688 F.2d 552 (8th Cir. 1982) .............................................................................................11

*Petrovic v. Amoco Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) .......................................................................................7, 18

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011).........................................................................................................9

*White v. Nat'l Football League*,
  822 F. Supp. 1389 (D. Minn. 1993) ....................................................................13

*Wineland v. Casey's Gen. Stores, Inc.*,
  267 F.R.D. 669 (S.D. Iowa 2009) ......................................................................17

**STATUTES & RULES**

Federal Arbitration Act. .........................................................................................2

Fed. R. Civ. P. 23 ...................................................................................1, 8, 9, 14

Fed. R. Civ. P. 23(a) ....................................................................................... passim

Fed. R. Civ. P. 23(b) ................................................................................7, 8, 11

Fed. R. Civ. P. 23(c) ...........................................................................................19

Fed. R. Civ. P. 23(e) ..........................................................................5, 6, 7, 18, 20

Fed. R. Civ. P. 23(g) ...........................................................................................19

**OTHER AUTHORITIES**

Manual for Complex Litigation, Fourth at § 13.14 ................................................7

Manual for Complex Litigation, Fourth at § 21.63 ................................................6

Manuel for Complex Litigation, Fourth at § 21.312 ............................................18

Manuel for Complex Litigation, Fourth at § 21.62 ..............................................17

Manuel for Complex Litigation, Fourth at § 21.632 ..........................................7, 8

Manuel for Complex Litigation, Fourth at § 21.633 ..............................................8

Newberg on Class Actions § 13:10 (5th ed.) ........................................................6

Newberg on Class Actions §13:44 (5th ed.) .....................................................13, 16

Newberg on Class Actions § 13:45 (5th ed.) .......................................................13

Plaintiffs Richard Dreyling, Maighan Dreyling, Taryn Knox, Tommi Head, Thomas James, Janet James, Kelley Mannix, Anatashia Wishon, Joseph Page, Lisa Rau, Kathleen Connelly-Brown, Bianca Venters, Twana Barrett, Nathan Poole, Jr., Kristy Fast, Timothy Fast, Darren Tucker, Ellen Tucker, Amy McAfee, Beverly Hand, Michelle Brantley, Brian Flaherty, Rachel Flaherty, Phillip Mann, Cynthia Brice, Debra Dodge, Michael Dodge, Steven Scott, Misty Scott, Robert Lefebvre, Julie Lefebvre, LaTisha Johnson (collectively, "Plaintiffs") and Temporary Lead Counsel to the Opt-Out Plaintiffs Sherrie R. Savett and Eric Lechtzin of Berger & Montague, P.C., J. Gordon Rudd, Jr. and David M. Cialkowski of Zimmerman Reed, PLLP, and Eric Holland and R. Seth Crompton of Holland Law Firm (collectively, "Class Counsel"), respectfully move for an order pursuant to Federal Rule of Civil Procedure 23 that would (1) conditionally certify the Settlement Class;[1] (2) preliminarily approve the terms of the Settlement Agreement; (3) approve the proposed Notice Plan and content of the proposed Class Notice; (4) appoint Temporary Lead Counsel as Class Counsel; and (5) schedule a final approval hearing and other related deadlines as more fully set forth below.

# I.    BACKGROUND

## A.    Statement Of The Case

This multi-district litigation originally consisted of fourteen putative class actions related to the preparation and processing of Plaintiffs' 2012 federal tax returns.  On October 10, 2013, the United States Judicial Panel on Multidistrict Litigation transferred the actions to the United States District Court for the Western District of Missouri for consolidated pretrial proceedings. *See* Transfer Order, Doc. 1.  On October 3, 2014, Plaintiffs filed the now operative Consolidated Class Action Complaint ("Consolidated Complaint"), naming as defendants HRB Tax Group,

---

[1] Capitalized terms have the same definitions as set forth in the Settlement Agreement, which is attached as Exhibit 1.

Inc., H&R Block Tax Services LLC, HRB Technology LLC, and HRB Digital LLC (collectively, the "Defendants").[2] *See* Consolidated Compl., Doc. 46.

Plaintiffs are taxpayers who had their 2012 federal tax returns prepared by or through HRB Tax Group, Inc., its affiliates, or H&R Block franchises. *See id.* at ¶¶ 13-35. Plaintiffs all sought to claim an education tax credit – the American Opportunity Credit – as a part of their 2012 federal tax returns. *Id.* at ¶¶ 47, 88. The American Opportunity Credit is a refundable tax credit that required eligible taxpayers to file Internal Revenue Service ("IRS") Form 8863 with their federal tax returns. *Id.* at ¶ 47. All of Plaintiffs' tax returns were accepted for filing by the IRS before February 23, 2013. *See id.* at ¶ 89.

Although the IRS accepted all of Plaintiffs' tax returns for filing, it put Plaintiffs' returns into its Error Resolution System for further processing. Plaintiffs allege that the IRS's action was caused by Defendants "either improperly complet[ing] or improperly submit[ing] (or both) Form 8863." *Id.* at 53. Although the IRS placed the returns into its Error Resolution System, the special processing did not affect the amount of Plaintiffs' federal tax liability or refund.

In connection with the preparation of their tax return, each Plaintiff signed a contract that defines the duties and obligations of the parties, and contains an agreement between Defendants and each Plaintiff to arbitrate their disputes on an individual basis. *See id.* at ¶¶ 13-35, 78-79.

---

[2] In addition to Plaintiffs, Kirsten Bullock, Ian and Melissa Anderson, and Rachelle and Nigel Gayle (collectively, the "Bullock Applicants") joined the Consolidated Complaint. Unlike Plaintiffs, the Bullock Applicants failed to timely opt out of the arbitration agreements in their contracts with Defendants. The Bullock Applicants sought to represent a putative class separate from the class Plaintiffs seek to represent. Specifically, the Bullock Applicants sought to represent only H&R Block clients who failed to timely opt out of their arbitration agreements with H&R Block. *See* Consolidated Compl. ¶ 98. As this Court earlier held, because the Bullock Applicants failed to timely opt out of their arbitration agreements, their claims must be arbitrated before the American Arbitration Association. *See* July 11, 2014 Order, Doc. 43. The Court also struck the Bullock Applicants' allegations related to their proposed putative class of customers who failed to timely opt out of arbitration, holding that to allow the Bullock Applicants to pursue certification of a putative class made up of individuals who signed agreements to individually arbitrate their claims against Defendants would contravene the Federal Arbitration Act. *See* January 7, 2015 Order, Doc. 59.

Each contract also provides that clients may opt out of the arbitration provision within sixty days of their signing or executing the arbitration agreement. *See, e.g.*, *id.* at ¶ 79. Each Plaintiff timely opted out of the arbitration provision. *Id.* at ¶ 91.

Plaintiffs allege that the IRS processing of their 2012 tax returns resulted in tax refunds being issued to them later than the dates and time which they claim would have otherwise occurred if the IRS had not put the returns into its Error Resolution System. *Id.* at ¶ 1. Plaintiffs further allege that Defendants' improper completion or submission of customers' Form 8863 and the resulting delays in processing their tax returns caused them damages. *See id.* at ¶¶ 13-35. Plaintiffs assert claims for breach of contract, negligence, unjust enrichment, and/or violation of state consumer protection statutes. *Id.* at ¶¶ 114-53. In the Consolidated Complaint, Plaintiffs state that they seek to represent a class of individuals defined as:

> All persons in the United States who timely opted out of H&R Block's Arbitration Clause, and on whose behalf Defendants prepared and/or submitted 2012 tax returns that included IRS Form 8863 before February 23, 2013 (the "Opt-Out Class").

*Id.* at ¶ 96. Defendants deny the allegations in the Consolidated Complaint.

### B. Settlement Agreement

For settlement purposes only, Plaintiffs seek conditional certification of the Settlement Class, which is defined as follows:

> All persons in the United States who timely opted out of Defendants' Arbitration Clause, and on whose behalf Defendants prepared and/or submitted 2012 tax returns that included IRS Form 8863 on or before February 22, 2013.
>
> All federal judges to whom this case is assigned and members of their families within the first degree of consanguinity, and employees, officers and directors of the Released Parties are excluded from the class.

*See* Ex. 1, Settlement Agreement ¶ 22.  The Settlement Class is comprised of 1,663 members.  *See id.*, Exs. A and B.[3]

If the proposed Settlement Class is approved by the Court, Defendants have agreed to make a one-time cash payment of $50.00 to each member of the Settlement Class who does not request exclusion from the Settlement Class.  *Id.* at ¶ 41.  For the majority of the Settlement Class, the Settlement Class Members will not have to take any action, and the Claims Administrator will simply mail a check for $50.00 to each of them within 45 days of the Effective Date.  *Id.*  However, for the individuals listed on Exhibit B to the Settlement Agreement, who used H&R Block's At Home Software program to prepare their 2012 federal tax returns and are in sole possession of the information that determines whether they timely opted out of the arbitration agreement included in their contract with Defendants,  in order to be paid the one-time cash payment of $50.00, these Settlement Class Members "must certify, under penalty of perjury, on their Certification Form that their opt out from the arbitration agreement was timely and submit the completed Certification Form to the Claims Administrator by mailing the postage prepaid Certification Form to the Claims Administrator."  *Id.* at ¶ 31.  For these Settlement Class Members, the Certification Form will be included in the Class Notice mailing.  The signed Certification Forms must be postmarked on or before the Objection/Exclusion Deadline. *Id.* at ¶ 32.

The costs of notice and administration of the Settlement do not diminish or otherwise affect the benefits provided to the Settlement Class.  Rather, Defendants are paying these costs and expenses in addition to the recovery to the Settlement Class.  Pursuant to the Settlement and

---

[3] Individuals who are listed jointly on Exhibits A or B to the Settlement Agreement submitted joint federal tax returns for tax year 2012.  For purposes of the Settlement Agreement and Settlement Class, each joint listing of individuals is treated as a single Settlement Class Member.  *See* Ex. 1, Settlement Agreement ¶ 1(GG).

subject to the Court's approval, Defendants have retained the services of Analytics Consulting LLC ("Claims Administrator") to effectuate notice to the Settlement Class Members and to administer the one-time cash payments.

Pursuant to the Settlement Agreement, Class Counsel intends to petition the Court for an award of attorneys' fees and expenses in an amount not to exceed $62,050.00 and for class representative awards in the amount of $150.00 to each Plaintiff. H&R Block has agreed not to oppose any petition for attorneys' fees and expenses that does not exceed $62,050.00 or any petition for class representative awards that do not exceed $150.00 per Plaintiff. Any award of attorneys' fees is in addition to and will not diminish the recovery to the Settlement Class. Moreover, the proposed class representative awards are separate from, and in addition to, the one-time payment of $50.00 to the Settlement Class Members and are intended to compensate Plaintiffs for their efforts associated with their participation in this lawsuit.

### C. Notice To The Settlement Class

The Settlement Agreement provides that, upon Preliminary Approval of the Settlement Agreement, the Claims Administrator shall mail the Class Notice, in the form approved by the Court, via U.S. Mail to the Settlement Class Members. *Id.* at ¶ 28(A). The Claims Administrator will re-send returned notices once if the United States Post Office address correction appears on the returned envelope. *Id.*

All costs, fees, and expenses of notice will be paid for by Defendants and will not dimimish the recovery to the Settlement Class. *Id.* at ¶ 26.

## II. ARGUMENT

### A. Settlement And Class Action Approval Process

Under Federal Rule of Civil Procedure 23(e), a "class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The Manual

for Complex Litigation describes the following multi-step procedure for approval of class action settlements:

1. Preliminary approval of the settlement;

2. Dissemination of mailed and/or published notice of the settlement to all affected class members; and

3. A formal fairness hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Manual for Complex Litigation, Fourth § 21.63 ("MCL 4th"); *see also Claxton v. Kum & Go, L.c.*, No. 6:14-CV-03385-MDH, 2015 WL 3648776, at *4-7 (W.D. Mo. June 11, 2015) (granting conditional certification for the settlement class, approving the proposed notice plan, and scheduling a fairness hearing). This multi-step procedure aims to safeguard the rights of absent class members and enables the court to fulfill its role of protecting the interests of such class members. *See* Newberg on Class Actions § 13:10 (5th ed.).

At the preliminary approval stage, the court must determine whether the settlement falls within the range of reasonableness and is sufficiently fair and adequate to warrant dissemination of notice to class members informing them of the settlement and to establish procedures for a final settlement hearing under Rule 23(e). *See First Nat'l Bank v. Am. Lenders Facilities, Inc.*, No. CT 00–269 JRT/RLE, 2002 WL 1835646, at *1 (D. Minn. July 16, 2002) ("The proposed settlement . . . appears, upon preliminary review, to be within the range of reasonableness and accordingly, the Notice . . . shall be submitted to the class members for their consideration and for hearing under Fed. R. of Civ. P. 23(e)."); *see also* Newberg on Class Actions § 13:10 (5th ed.) ("The general rule is that a court will grant preliminary approval where the proposed settlement 'is neither illegal nor collusive and is within the range of possible approval.'" (quoting *In re Vitamins Antitrust Litig.*, No. 99-197(TFH), 1999 WL 1335318, at *5 (D.D.C. Nov. 23,

1999)).  The Eighth Circuit has "recognized that a class action settlement is a private contract negotiated between the parties," and that "Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned."  *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005).  In making this determination, the court "should not substitute [its] own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel."  *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) (internal quotation marks omitted).

The Court's grant of preliminary approval will allow all Settlement Class Members to receive notice of the Settlement's terms and the date and time of the final approval hearing.  At the final approval hearing, Settlement Class Members will have the opportunity to be heard regarding the Settlement, and further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented at that time.  *See* MCL 4th at §§ 13.14, 21.632.  Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion.  *Id.* at § 13.14.

If a class has not yet been certified, at the preliminary approval stage, the court should also "make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."  *Id.* at § 21.632.   In deciding whether to certify the proposed class for settlement purposes, the court "may take the proposed settlement into consideration when examining the question of certification."  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 308 (3d Cir. 1998).

**B.      Conditional Certification Of The Settlement Class Is Appropriate.**

This Court has not yet certified this case as a class action.  For settlement purposes only, Plaintiffs request that the Court provisionally certify the nationwide Settlement Class defined above.  At this point in the approval process, provisional certification permits notice of the Settlement to inform Settlement Class Members of the existence and terms of the Settlement, their right to be heard on its fairness, their individual right to opt out, and the date, time, and place of the formal fairness hearing.  *See* MCL 4th at §§ 21.632, 21.633.

In order for a district court to certify a class for settlement, it must first find that the class satisfies the requirements of Rule 23.    *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("The safeguards provided by the Rule 23(a) and (b) class-qualifying criteria, we emphasize, are not impractical impediments—checks shorn of utility—in the settlement-class context.").  For settlement purposes, Defendants have conditionally stipulated that Plaintiffs satisfy the class certification requirements set forth in Rule 23.  Additionally, for the reasons that Plaintiffs describe below, this Settlement Class in fact meets the requirements of Rule 23(a) and (b).

**1.      Rule 23(a) Is Satisfied.**

Rule 23(a) conditions certification of a class on findings that (1) members of the proposed class are so numerous that the joinder of all members is impracticable; (2) commonality exists among the class on an issue of law or fact raised by the plaintiffs; (3) the claims of the proposed class representatives are typical of the claims of the absent class members; and (4) the proposed class representatives will fairly and adequately represent the interests of the classes.  Fed. R. Civ. P. Rule 23(a).  Here, in the context of the Settlement, all four elements are satisfied.

### a. Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." "In addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members."

Here, based on H&R Block's data and discovery in this matter, it is estimated that the proposed Settlement Class has approximately 1,663 members geographically dispersed throughout the United States. *See* Ex. 1, Settlement Agreement, Exs. A and B. Given the number and geographic distribution of the Settlement Class Members, joinder of all Class Members would be impracticable, and the proposed Settlement Class easily satisfies Rule 23's numerosity requirement.

### b. Commonality

Under 23(a)(2), a district court may certify a class when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The key inquiry for the commonality analysis is whether the Plaintiffs and the Settlement Class Members' claims "depend upon a common contention" that "is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2), even a single common question will do." *Id.* at 2556.

Here, the Settlement Class Members' claims share common questions, such as (a) whether Defendants' failed to prepare and transmit the Settlement Class Members' Form 8863 accurately and (b) whether Defendants knew or should have known about any alleged defects in their services.

### c. Typicality

Typicality under Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is "fairly easily met so long as other class members have claims similar to the named plaintiff," *Deboer*, 64 F.3d at 1174, or the "same or similar grievances as the plaintiff," *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977). "In determining typicality, courts consider whether 'the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory.'" *Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-CV-04321-NKL, 2013 WL 3872181, at *2 (W.D. Mo. July 25, 2013) (quoting *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996)).

Here, the claims of the named Plaintiffs are typical of those of the Settlement Class. Like those of the Settlement Class, their claims arise out of an alleged error in tax preparation services contracted for by Plaintiffs and members of the Settlement Class. *See, e.g.*, Consolidated Compl. ¶ 96. Supported by the same legal theories, Plaintiffs and all Settlement Class Members share claims based on the same alleged conduct: Defendants alleged errors concerning the preparation and/or submission of Form 8863. *See, e.g.*, Consolidated Compl. ¶ 104. Plaintiffs therefore satisfy the typicality requirement.

### d. Adequacy

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class" which "they seek to represent." *Windsor*, 521 U.S. at 625. "The focus of the adequacy inquiry is whether '(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified

counsel.'" *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 191 (W.D. Mo. 2009) (quoting *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982)).

Here, Plaintiffs are adequate representatives. First, Plaintiffs have common interests with members of the Class because their claims are co-extensive with those of the Settlement Class. Plaintiffs assert the same legal claims and theories as those of all Settlement Class Members. *See, e.g.*, Consolidated Compl. at ¶ 106. Plaintiffs seek the identical relief that would be sought by all members of the Settlement Class. *See, e.g.*, *id.* at ¶ 108. There is no apparent conflict between Plaintiffs' claims and those of the proposed Settlement Class. Second, Class Counsel has extensive experience and expertise in prosecuting complex consumer class actions. *See* Declaration of Eric Lechtzin in Support of Motion for Preliminary Approval of Class Settlement. Moreover, each named Plaintiff has assumed the responsibility of representing the Settlement Class and has stood ready to represent the class at trial if necessary. Plaintiffs have taken seriously their obligations to the Settlement Class. Nothing more is required.

### 2. Rule 23(b)

In addition to satisfying the requirements of Rule 23(a), a party seeking class certification pursuant to 23(b)(3) must also demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member." *Claxton v. Kum & Go, L.C.*, No. 6:14-CV-03385-MDH, 2015 WL 3648776, at *4 (W.D. Mo. June 11, 2015) (quoting *Halvorson v. Auto–Owners Ins. Co.*, 718 F.3d 773, 778–80 (8th Cir. 2013)); *see In re Workers' Comp.*, 130 F.R.D. 99, 108 (D. Minn. 1990) ("The mere existence of individual questions such as damages does not

automatically preclude satisfaction of the predominance requirement … so long as there is some common proof to adequately demonstrate some damage to each plaintiff." (citations omitted)). "[T]he fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance." *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (W.D. Mo. 2004). With respect to the superiority requirement, "[a] class action is a superior form of litigation if it is capable of addressing 'the rights of groups of people who individually would be without effective strength to bring their opponents to court at all.'" *Hartley v. Suburban Radiologic Consultants, Ltd*., 295 F.R.D. 357, 377 (D. Minn. 2013) (quoting *Amchem*, 521 U.S. at 617).

Here, particularly in the context of settlement, the same common questions relevant to the Rule 23(a)(2) analysis predominate, including whether Defendants committed an error in their tax preparation services and whether Defendants should have known about the potential for any error. As a practical matter, absent the use of the class action device, it would be too costly and inefficient for each individual plaintiff to finance a lawsuit asserting such claims through trial and appeal. Moreover, the Settlement provides class members with an ability to obtain prompt, predictable, and certain relief, whereas individualized litigation carries with it great uncertainty, risk, and costs, and provides no guarantee that the allegedly injured plaintiff will obtain necessary and timely relief at the conclusion of the litigation process. For these reasons, the superiority requirement is satisfied.

### C.   The Settlement Should Be Approved As Fair, Reasonable, And Adequate.

#### 1.   The Settlement Is Presumptively Fair.

The Eighth Circuit has recognized that "[t]he law strongly favors settlements." *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist.*, 921 F.2d 1371, 1383 (8th Cir. 1990); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where

substantial judicial resources can be conserved by avoiding formal litigation.").  "The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context."  *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993).  This is so because "[s]ettlement of the complex disputes often involved in class actions minimizes the litigation expenses of . . . [p]arties and also reduces the strain such litigation imposes upon already scarce judicial resources."  *In re Charter Commc'n Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *4 (E.D. Mo. June 30, 2005); *see also* Newberg on Class Actions §13:44 (5th ed.).  Thus, in deciding whether to grant preliminary approval of a class action settlement, there "is a presumption of fairness when a settlement is negotiated at arm's length by well informed counsel."  *In re Charter Commc'ns, Inc. Sec. Litig.*,  2005 WL 4045741, at *5; *see also In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958-ADM, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013); Newberg on Class Actions § 13:45 (5th ed.).

The Settlement Agreement in this action is the result of months of arm's length negotiations among the parties and their experienced counsel, and informed by the exchange of significant information throughout the process.  Accordingly, the well-recognized presumption of fairness applies to the Agreement.

### a. The Settlement Is The Product Of Extensive Arm's-length Negotiations.

The Settlement Agreement was the result of arm's-length negotiations between the parties.  The material terms of the Settlement Agreement were realized after 6 months of negotiations, consisting of numerous telephonic conferences and e-mail communications between counsel for the parties beginning in March 2015 and continuing through September 2015.  The negotiations were informed by counsels' investigations of the facts and good-faith assessments of the costs and risks of proceeding to trial.

### b.  Counsel Are Experienced In Similar Litigation.

"Significant weight" should be given "to the belief of experienced counsel that settlement is in the best interest of the class, so long as the Court is satisfied that the settlement is the product of good faith, arms-length negotiations." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 184 (E.D. Pa. 1997). Here, Class Counsel have significant experience in the litigation, certification, trial, and settlement of nationwide consumer class actions, and have served as lead or co-lead counsel in many consumer protection class actions. *See* Declaration of Eric Lechtzin in Support of Motion for Preliminary Approval of Class Settlement. Defendants' counsel has similarly defended numerous nationwide consumer class actions and has significant experience in litigating and settling such actions. In negotiating the Settlement Agreement, counsel for the parties relied on their years of relevant experience and their independent investigations of the facts of the case. They negotiated the terms of Agreement to meet the requirements of Rule 23 and to establish procedures to ensure all Settlement Class Members' due process rights were adequately protected. Because the Settlement Agreement is the product of meaningful investigation and good-faith negotiation by experienced and qualified counsel, counsels' belief that the Agreement is in the best interest of the Settlement Class supports the presumption that the Agreement is fair, reasonable, and adequate.

### c.  The Factual Record Was Well Developed Through Independent Investigation.

The detailed Consolidated Complaint filed by Plaintiffs demonstrates that their counsel thoroughly investigated and analyzed the legal claims and factual allegations in this case. Moreover, as a result of the parties' settlement discussions, Defendants shared information related to their preparation and submission of Plaintiffs' 2012 federal tax returns and the IRS's processing of their returns. As a result, Class Counsel were well-positioned to evaluate the

strengths and weaknesses of the case and the appropriate basis upon which to settle it. *See In re Charter Commc'n, Inc. Sec. Litig.*, 2005 WL 4045741, at *5.

> ## 2. The Settlement Agreement Satisfies The Fairness Criteria Established By The Eighth Circuit For Final Approval.

Although "the standard for preliminary approval is far less demanding" than the standard for final approval, *Gates v. Rohm & Hass Co.*, 248 F.R.D. 434, 444 n.7 (E.D. Pa. 2008), the Settlement Agreement satisfies the multi-factor analysis articulated by the Eighth Circuit for final approval of class settlements. In determining whether a settlement is fair, reasonable, and adequate, the Eighth Circuit has identified the following relevant factors: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 932 (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975)). Consideration of these factors weighs in favor of finding the Settlement Agreement is fair, reasonable, and adequate.

First, the Settlement Agreement is fair and reasonable in light of the alleged claims and defenses. Plaintiffs and Class Counsel were confident in the strength of their case, but also pragmatic in their awareness of the risks inherent to litigation and the various defenses available to Defendants. Throughout the negotiation process, for example, Defendants have steadfastly denied the allegations in the action, and Defendants continue to deny any wrongdoing or liability alleged in the action. The reality that Settlement Class Members could end up recovering only a fraction of the settlement benefits or even losing at trial was significant enough to convince Plaintiffs and Class Counsel that the Settlement reached with Defendants outweighs the gamble of continued litigation. The Settlement Agreement ensures that the Settlement Class Members will timely receive meaningful relief in the form of a $50.00 check from H&R Block.

Case 4:13-md-02474-FJG   Document 99   Filed 12/16/15   Page 20 of 27

Second, Defendants have the financial wherewithal to satisfy the financial terms of the Settlement Agreement.

Third, if this case were to be litigated further, the next steps would entail costly, time-consuming document productions and depositions – including expert depositions – followed by contested motions for class certification and summary judgment. If Defendants were to prevail at the class certification or summary judgment stages, then it could reduce recoverable damages or eliminate them altogether. Even if Plaintiffs did prevail, any recovery could be delayed for years by an appeal. The Settlement Agreement provides a monetary benefit to the Settlement Class in a timely fashion that minimizes any significant commitment of future resources by the parties and the Court. *See* Newberg on Class Actions § 13:44 (5th ed.) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.").

Finally, all of the named Plaintiffs fully support the Settlement Agreement, and, to date, the parties are not currently aware of any Settlement Class Member who intends to oppose the Settlement Agreement.

### 3. The Requested Class Representative Incentive Awards Are Reasonable.

Incentive awards for class representatives like the ones requested here are appropriate. *See Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 678 (S.D. Iowa 2009) ("Courts routinely recognize and approve incentive awards for class representatives and deponents."); *Gulino v. Symbol Tech., Inc.*, No. 06CV2810, 2007 WL 3036890, at *2 (E.D.N.Y. Oct. 17, 2007) ("Payment to class representative can properly be included in class action settlements to the extent they are needed to compensate the named plaintiffs for the efforts they have made on behalf of the class."). Small incentive awards, which serve as premiums in addition to any

claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *See* MCL 4th at § 21.62 n.971 (Incentive awards may be "merited for time spent meeting with Class members, monitoring cases, or responding to discovery."). Such awards are generally proportional to the representatives' losses or claims, and can range from several hundred dollars to many thousands of dollars. Here, the Settlement Agreement provides that Plaintiffs may seek up to $150 each to compensate them for their service to and efforts on behalf of the proposed Settlement Class. Defendants will not oppose a petition for the payment to each Plaintiff of $150.

### 4. The Requested Attorneys' Fees Are Fair And Reasonable.

Subject to the Court's approval, and as further explained in the Settlement Agreement, Defendants have agreed to pay up to $62,050.00 in fees and expenses to Class Counsel, and to pay such amounts in addition to any of the settlement benefits to be paid and provided to the Settlement Class. The parties negotiated this amount only after the substantive terms of the settlement were agreed upon. Prior to final approval, Class Counsel will file a separate petition for attorneys' fees and expenses describing the reasonableness of their fee and expenses request in light of the amount of work done by counsel, the results obtained, the quality of representation, and the complexity and novelty of the issues presented.

### D. The Court Should Approve The Distribution Of The Proposed Notice To The Settlement Class Members.

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise . . . .'" MCL 4th at § 21.312. "There is no one 'right way' to provide notice as contemplated under Rule 23(e)." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. 4:03-MD-015, 2004 WL 3671053, at *8-9 (W.D. Mo. Apr. 20, 2004). "[T]he notice need only satisfy

Case 4:13-md-02474-FJG   Document 99   Filed 12/16/15   Page 22 of 27

the broad 'reasonableness' standards imposed by due process." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) (internal quotation marks omitted). It "must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950)). "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad "reasonableness" standards imposed by due process." *Grunin*, 513 F.2d at 121.

Here, the parties propose that notice be made as set forth in Section II of the Settlement Agreement. The parties have identified 1,663 Settlement Class Members, and the Claims Administrator will mail the Proposed Notice Form, attached as Exhibit D to the Settlement Agreement, to the Settlement Class Members. The Class Notice was specifically drafted to meet the criteria recommended by Manual of Complex Litigation. *See* MCL 4th at § 21.312. It defines the class; describes clearly the options open to the Settlement Class Members and the deadlines for taking action; describes the Certification Form and the process for submitting the Certification Form; describes the essential terms of the Settlement Agreement; discloses the nature of the class representative awards; provides information regarding attorneys' fees and expenses; indicates the time and place of the final fairness hearing; describes the methods for objecting to the Settlement Agreement or requesting to be excluded from the Settlement Agreement; identifies the amount of each Settlement Class Members award; and provides the contact information of Class Counsel. *See* Ex. 1, Settlement Agreement, Ex. D.

In summary, the Class Notice is clear and straightforward, providing Settlement Class Members with enough information to evaluate the Settlement, and to object to the Settlement or request exclusion if desired. Accordingly, the notice plan is adequate under Rule 23(c)(2).

### E. Appointment Of Class Counsel

Rule 23(g) requires a court to appoint class counsel when it certifies a class. Class counsel must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). Factors to be considered include "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Sherrie R. Savett and Eric Lechtzin of Berger & Montague, P.C., J. Gordon Rudd, Jr. and David M. Cialkowski of Zimmerman Reed, PLLP, and Eric Holland and R. Seth Crompton of Holland Law Firm respectfully request that the Court appoint them as Class Counsel. The experience and qualities of the proposed Class Counsel have been establish, *see* Declaration of Eric Lechtzin in Support of Motion for Preliminary Approval of Class Settlement, and the proposed Class Counsel will continue to zealously represent the interests of Plaintiffs and the Settlement Class Members.

### F. Scheduling A Final Approval And Fairness Hearing Is Appropriate.

The last step in the settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation. Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of final approval. In addition, Settlement Class Members, or their counsel, may be heard in support of or in opposition to the Settlement Agreement. The Court will determine after the final approval hearing whether the Settlement should be approved, and whether to enter a final order and judgment under Rule 23(e). The parties propose the following

schedule for the settlement-related events in this case. The proposed dates in the right column are respectfully requested.

| Event | Proposed Due Date/Deadline |
|---|---|
| Deadline for Claims Administrator to mail Class Notice to all Settlement Class Members and Certification Form to Settlement Class Members listed on Exhibits B to the Settlement Agreement | Thirty days from the date the Court enters the order preliminary approving the Settlement. |
| Deadline for filing Motion for Final Approval of Settlement | February 1, 2016 |
| Deadline for filing Class Counsel's Application for Attorneys' Fees and Expenses and Class Representative Awards | February 1, 2016 |
| Date by which Requests for Exclusion must be mailed to Claims Administrator | Seventy-five days from the date the Court enters the order preliminarily approving the Settlement. |
| Deadline for filing written objections to Settlement with the Court | Seventy-five days from the date the Court enters the order preliminarily approving the Settlement. |
| Deadline for filing notice of intent to appear at Final Approval Hearing with the Court | Seventy-five days from the date the Court enters the order preliminarily approving the Settlement. |
| Deadline for Settlement Class Members listed in Exhibit B to the Settlement Agreement to mail Certification Forms to Claims Administrator | Seventy-five days from the date the Court enters the order preliminary approving the Settlement. |
| Deadline for filing response(s) to objections | March 11, 2016 |
| Final Approval Hearing | March 25, 2016 |

## III.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the relief requested herein. A proposed Order is attached as Exhibit 2 hereto.

**HOLLAND LAW FIRM**

Dated:  December 16, 2015

By: s/Eric D. Holland
Eric Holland
R. Seth Crompton
300 N. Tucker Street, Suite 801
St. Louis, MO 63101
Phone: 314-241-8111
Fax: 314-241-5554
E-Mail: eholland@allfela.com
E-Mail: scrompton@allfela.com

**ZIMMERMAN REED, PLLP**
J. Gordon Rudd, Jr.
David M. Cialkowski
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Phone: 612-341-0400
Fax: 612-341-0844
E-Mail: Gordon.Rudd@zimmreed.com
E-Mail: David.Cialkowski@zimmreed.com
E-Mail: Brian.Gudmundson@zimmreed.com

**BERGER & MONTAGUE, P.C.**
Sherrie R. Savett
Eric Lechtzin
1622 Locust Street
Philadelphia, PA 19103
Phone: 215-875-3000
Fax: 215-875-4636
E-Mail: ssavett@bm.net
E-Mail: elechtzin@bm.net
BERGER & MONTAGUE, P.C.

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2015, I electronically filed the foregoing papers

using the CM/ECF system, which will send a notice of such filing to all counsel of record.

s/Eric D. Holland
Eric D. Holland
**HOLLAND LAW FIRM**
300 North Tucker Boulevard, Suite 801
St. Louis, MO 63101
Telephone: 314-241-8111
Facsimile: 314-241-5554
Email: eholland@allfela.com